The next case on the calendar, United States v. Warner. Morning, Your Honors. May it please the Court. Devin McLaughlin for Defendant Appellant Ed Warner. So this is a strange case. It's a case where I have a defendant, Mr. Warner, who has a very minor interaction with child pornography, nine hours of viewing. He then takes it upon himself to go down and talk to the FBI the next day and lo and behold ends up disclosing what he had done to his daughters when they were ten months old or younger, ten or twenty years in the past. They come to execute a search warrant the day before, right? Correct. And they seize his computer. There's no child pornography on his computer. But the next day he goes down. He ends up making these disclosures and these disclosures. Do you agree that the conduct that he disclosed was conduct that we would all describe as sexual abuse? Correct. And in connection with the 2G2.B5 enhancement, it was sexual abuse in terms of his interactions with his daughters as opposed to interactions with daughters' friends. So the first argument we have, Your Honors, is that this should fit within the voluntary disclosure departure under the guidelines. There's an exception under 5K2.16 to the application of that downward departure where the disclosure is in connection with related conduct. Correct. Why isn't sexual abuse related conduct, that is, conduct related to the child pornography charges? Correct. And I have not argued nor can I argue that the FBI's investigation of the child pornography was not related conduct to... Why isn't that dispositive? So I've struggled with that, Your Honor. Well, I don't care why it's not dispositive. So the question becomes why should it be dispositive insofar as I have... Because of the language of 5K2.16. And so I have the middle sentence, which clearly applies to my client from our perspective. I then have the last sentence, which was not raised below. The judge went off on it not being, you know, that this is only limited to Federal offenses, which we assert is wrong, and I think we have the better of that argument. The language in the end of 5K2.16 covers my client, and I concede that it covers my client. So if it covers your client, end of case. End of that argument. Right. I can try to make policy arguments as to why that makes no sense, but I know from this Court's jurisprudence the Commission sets forth the language of the departure ground, and because this happened in the context of the FBI investigation, I can't get around that language. And where's the plain error in applying an enhancement for a pattern of sexual abuse when your client admitted that he engaged in sexual contact with his daughters on numerous occasions before committing the instant offense? So I end up going to Rheingold, and Rheingold on his face is against me. Rheingold on his face is the case that goes ahead and holds, listen, the fact that this stuff happened a long time ago is not going to take it out of 2G2.B5. The fact that mitigating circumstances may be present are not going to take it out of 2G2.B5. But I do look at Rheingold, which says, listen, this enhancement is directed towards recidivism. And when I started out this argument, I purposely used the strange case language because the actions that Mr. Warner undertook with regard to ten years old children and only his three daughters and only up to the age of ten months and he has no additional daughters, the idiosyncratic nature of that, in terms of assessing recidivism, are we going to add an additional five points for that? Consistent with the first argument, it fits the language of 2G2.B5. What would the recidivist have to be? That he'd have to have some more kids who are under age that he abused? That would be the test? Your Honor, his fact, it is very specific defense, individual defense-oriented analysis. Does this enhancement make sense? Should it be applied to this individual? Well, what about the plea agreement, though? He agreed to it in the plea agreement. He did agree to it in the plea agreement, which is why I'm stuck in plain error land, Your Honor. The government does make the argument, and I hope the Court resists this, that somehow all review is forfeited by virtue of it being in the plea agreement. What's the use of the plea agreement? I mean, if you, in connection with the guidelines calculation, agree that an enhancement applies, right? There may be other things where, sure, it's part of the plea agreement, but you can appeal. But the central dispute, as I recall it, when the two parties, the government and the defense, are trying to arrive at a plea agreement is going to be the guidelines. Maybe a few other things, but that's central dispute. So what's the use of having a plea agreement if you can, if the defense can agree to the application of a guidelines enhancement and then appeal that? If it constitutes plain error, Your Honor, then there should be review. And the reason there should be review, and the Second Circuit has been clear about this, is, A, plea agreements aren't some neat, even, balanced negotiation process. The government holds all the cards, and we're trying to get through to acceptance of responsibility on the defense side. A plea agreement, as the Second Circuit has also recognized, it's an agreement between the two parties, but the Court has an independent obligation to make sense of, to make sure that the two parties don't get it wrong, because, believe me, in the— What is the use of a plea agreement? Plea agreement has many, many, many, many uses, Your Honor, and allowing plain error review somehow doesn't— What's the use for the government? Why would it— No trial. I mean, there are tons of positive aspects of a plea agreement, but if the two parties themselves— And what's the use of an appellate waiver? Appellate waivers are different, Your Honor, insofar as the only, as I review it, the only way a defendant is going to forfeit his review of potential issues is through an appeal waiver. An appeal waiver is enforceable, absent being out on the extremes, you know, in terms of there are some things that are outside of it, but, Your Honor, I went ahead and cited you to the case where there's a plea agreement, and one aspect is what's the amount of the loss for purposes of restitution, and the Court itself said, we're going to plain error review that, even though the two parties end up agreeing this is the number, they recognize that there is a disparity in the bargaining power that exists, and the Court has the independent obligation to make sure that it's right. I appreciate this. I just— The notion that plain error review— Over and over again, we see these—we see appellate waivers. We also see an agreement with respect to a particular application of a particular enhancement, and yet it's being argued again. It would be—and I'm not on the strongest footing on this appeal, Your Honor, and I don't want to create bad review analysis that would go ahead and plague, you know, future years of how one's going to deal with this, but just imagine the case where they really do get it wrong. I mean, there is plain error that adversely affects the administration of justice, et cetera, and to somehow say that's forfeited, forfeiture is a really very limited inquiry, and so I understand that you end up getting hit by, we're arguing these things again and again and again, but I'd ask that it not be turned into a bad standard of review for that. Thank you. You're welcome. Can I just ask one more quick follow-up question, and that is, even if we are in plain error land on this, he did say in his statement that, I'm afraid that if I don't get help I need, I will keep molesting children. So he was concerned when he went the day after his search warrant, when he went to talk to the FBI and gave the statement to the Bureau that he would keep molesting children. It wasn't just I will keep accessing child pornography, because I know we can only look at the daughters, the conduct with the daughters for the enhancement, but in terms of plain error, he continued to have some sexual contact with the friends of the daughters up until the year he was caught. So how is this somehow an injustice to say, even if we are in plain error review, to say, well, you know, it's the molestation that really matters here too, not just the viewing the child pornography? How does it violate, how does it constitute a plain error problem if that's the record we have? Your Honor, my argument in terms of plain error is that the 2G2.B5A is limited to what can apply to what happened vis-a-vis his daughter's friends and the Rheingold decision makes that clear. So it is limited to what happened to his daughters, and my argument is what happened to his daughters was 10 and 20 years ago only applied to a daughter, and there are no more daughters. And so the recidivism aspect of Rheingold doesn't apply. Is that going to convince you that it's plain error? I don't know, but that's the argument. Thank you. Thank you. Mr. Silver. Thank you, Your Honor. May it please the Court. I agree with the Court that the fact that Mr. Warner's disclosures occurred during an investigation of related conduct forecloses the availability of the 5K2.16 departure. Do you concede that even if the District Court didn't commit plain error because Mr. Warner admitted engaging in sexual contact with his daughters, that it did err in applying the Warner's conduct with respect to the daughters' friends? Yes. But with respect to the argument that the enhancement was inappropriate because it's really designed to ferret out, if you will, a likelihood of recidivism, you know, some weeks before Mr. Warner's arrest, as he disclosed to the FBI, he engaged in this and he said the only reason he did not touch this young girl's vagina was he was in fear of being caught. So he's teetering with respect to these older children, whether or not that would have occurred in the future, and it clearly concerned the District Court. How would you differentiate this case from Dorvey and Jenkins? Well, here there is actual abuse. In both of those cases, there was not. In Dorvey, there was a procedural error related to the District Court's misapprehension about whether the court was imposing a guideline sentence. There was no such procedural error here. In Dorvey, there was a procedural error in imposing a substantial sentence that the defendant had shown disdain for the law, and there's no such type of consideration here with respect to Mr. Warner. And again, unlike Jenkins, here there was conduct that clearly troubled the District Court in terms of predicting the possibility of recidivism. Finally, in Dorvey, this Court was concerned that the sentence that was imposed by virtue of application of the 2G2.2, I believe that was the right section, enhancements resulted in a sentence at or near the statutory maximum, and here the sentence that was imposed was just above the halfway point toward the statutory maximum. But I think the most distinguishing characteristic here is the actual abuse that resulted in the five-level enhancement. And there's no question but that here the Dorvey-type argument was raised clearly, and the District Court expressed that it had considered those arguments but felt that the enhancements were nonetheless appropriate. So, fairly distinct. Can I just ask you, it seems like it's been conceded now about the related conduct issue in the departure section, but do you agree the District Court got it wrong when it said it had to be either the charged federal offense or other federal offenses? If you use the related language in the last sentence, doesn't it apply more broadly than that? I don't believe so, Your Honor. You don't believe so? I do not. And I made an argument very poorly in my brief when I referred to Section 1B1.1H of the guidelines, and I was trying to show the Court that 5K2.16 refers to offense. Yes, I'm sorry if I misstated that. It doesn't refer to offensive conviction or instant offense, which would have been more clear. But I didn't say, and in preparation for today and in reviewing the reply brief, Section 1B1.1H does define offense for us. And when the term offense is used in the guidelines, according to 1B1.1H, it means the offense of conviction and any relevant conduct. Relevant conduct is different from related conduct. Exactly. How is that different? I view related conduct as very similar to relevant conduct without the temporal restriction. It's nowhere clearly defined, but it seems to me that this is relevant conduct. One, almost ipso facto. So if a drug dealer is busted at the federal level for 20 kilograms of whatever, cocaine, and then in the course of proffering confesses that 20 to 30 years earlier he had engaged in another drug deal, would that be relevant conduct? No. No. It might be related, although the difference is the temporal requirement. You're conceding that. Oh, yes. No, I think they seem to be first cousins, if you will, but there is no temporal requirement when discussing related conduct, at least as we're talking about it here. But I think it's clear that, and it's conceded here, that the earlier abuse is related conduct to the child pornography possession. I would say ipso facto. Related is broader than relevant conduct. Yes. Because you would concede that it's not relevant conduct because it was 10 years before, had nothing to do with the child pornography maybe, but was sexual abuse of his children, and that was 10 years ago. It's not relevant conduct, but it is related conduct. Is that your argument? That is my argument. How do you define related, then? The best way that I can is that it has some—well, let me back up. Relevant conduct is generally defined as conduct that is committed in the preparation, commission, or concealment of the offense. Certainly this prior abuse does not fall within the concept of related conduct. Here I would say if there's a guideline enhancement, as we have here, for this conduct, it's necessarily related. That determination has been made. It is related. It's going to be used to determine an offense level. Because the bump he got, the five-level bump, says specifically it can be—it is for child—it's for sexual abuse. In other words, even though he was charged here with the child pornography possession, right? Yes. Receipt. That particular bump, the five-level bump, doesn't really deal with that. It talks about sexual abuse of minors, right? And it says it doesn't even have to be in connection with this charged offense. So that creates a broader relevant conduct definition. Is that what you're saying? I don't want to say it's a broader relevant conduct definition. They're certainly very similar. But I would say that the abuse here is not relevant conduct. But it is related conduct. Yes. By virtue of being drawn in by the guideline enhancement, which is designed to act as a predictor of recidivism and dangerousness, which makes it related to the offender. That's the best I can do, Your Honor. And unless the Court has any further questions, I'm prepared to rest on the briefs. Thank you. Thank you, Your Honor. Briefing, Your Honors. In terms of the last inquiry on 5K2.16 and whether the offense is broader than the offense of conviction, as it indicates in 1B1.1, if you're going to limit it to the offense of conviction, it should say the offense of conviction or the incident offense. If it doesn't say that, it tends to be broader. This uses 5K2.16 interchangeably the offense and an offense. And in the context of child pornography, because child pornography enhancements sweep so broadly, because they sweep to related conduct beyond relevant conduct, I think that ends up supporting the notion that, at least in the child pornography world, here he ended up getting a five-point additional enhancement for what is not relevant conduct but what is related conduct. And when you have a broader guideline, then when you're looking at when you should get credit under 5K2.16, it should sweep more broadly than the incident offense, the offense of conviction, and frankly should sweep to related conduct because you're hit. He thought it was related conduct, didn't he? When he came in the next day and told him about it? He thought it was conduct that he needed to get off his chest and he was concerned about it. He didn't come in and say, you know, I sold drugs 20 years ago or I robbed some banks 20 years ago. He said, I want to tell you, I want to get this off my chest and I abused my daughters and her friends. That was the day after the child pornography circuit. Which is why we're conceding that it's related conduct under the circuit's jurisprudence. I have not touched on the substantive unreasonableness of his sentence. The one thing that I would — and your Honor has talked to the government about that — the one thing I would ask is that understanding the contact offense, which added plus five, and if we get to substantive unreasonableness, obviously we're not able to argue about the plus five. We've already got there. So he's gotten an additional 51 months for what happened on that front. It is one of those quality and quantity of his collection, because you have the 10-plus enhancements that Dorvey and Jenkins and the commission, et cetera, question. You have the — So Mr. Silver, I think his response is, this is a little different from Dorvey because there was actual sexual abuse. Why doesn't that take it out of Dorvey, outside of the scope of what Dorvey was concerned about? It is a factual differentiation with Dorvey, absolutely, that is problematic in terms of me arguing substantive unreasonableness. Dorvey, Jenkins, they all like to rely on the fact that we have no contact offenses, so therefore off we go on reasonableness. This is a challenge on that front, but what's, I think, important to recognize is the relative increase in his sentence based on not the child piece, which already gives you the plus five and 51 additional months, but on the number of images, prepubescent, use of computer, and sadomasochistic. He gets a plus 10. He triples his guideline from what would be 41 months absent the statutory man-min to 121 months. And so, yes, it's more difficult in the context of having a contact defense, but it triples. So it's relatively, frankly, more onerous and changes his sentence more than it does in Dorvey and Jenkins. The arguments about this being a first-time offense was raised, wasn't it, before the district court? Sorry, Your Honors. In terms of 3553A type argument, all that was raised. In terms of Mr. Warner's sentencing memorandum, all of these ameliorating facts were raised in terms of, please give me down to the man-min. And the district court considered them? The district court considered them. And the question is whether, in terms of our review, whether what the district court sentenced, whether it fell outside the range of permissible decisions? Correct. And if three of you feel it shocks your conscience, then I will prevail. If you don't, then we're not going to prevail on the substantive reasonableness. Thank you. Thank you. Thank you both for your good arguments. The Court will reserve decision. Final case on the calendar, Dole v. Huntington Union Free School, is on submission. The Clerk will adjourn.